**ALLSTATE INSURANCE COMPANY, Petitioner, Appellant,**

v.

**S.F., et al., Respondents,**

**R.K., et al., Defendants.**

**No. C2-93-968.**

Supreme Court of Minnesota.

June 30, 1994.

Michael Donohue, Frederick L. Grunke, Donohue Rajkowski, Ltd., St. Cloud, for appellant.

Patrick M. Connor, Eric D. Satre, Peterson, Connor & Satre, Minneapolis, for respondent.

## OPINION

KEITH, Chief Justice.

This case raises the issue of whether Allstate Insurance Company has a duty to defend and indemnify its insured, (S.F.), under a homeowner's policy, for complainant's claims of sexual assault by the insured and two other men. We reverse the court of appeals and reinstate the judgment of the trial court that there is no duty here to defend and indemnify.

Complainant, (Ms. C.B.), and the insured were friends prior to November 21, 1989. They had first met when a mutual friend invited complainant to join him and the insured in the friend's office. At that first meeting, complainant engaged in consensual sexual activity with both men. The insured and complainant continued to have a sexual relationship for a period of several months, and on one occasion complainant again engaged in sex with the insured and his friend in the latter's office. Complainant stated that she then began to suspect that her relationship with both men was "wrong" and she stopped seeing both men. For several months prior to November 1989, complainant and the insured had not seen each other.

On the night of November 21, 1989, the insured and two friends went out drinking in several bars in downtown Minneapolis. One of the men was a client of the insured, and the other was a producer from Los Angeles whom the insured had not met prior to that night. The producer apparently said to the insured that he was interested in some sex, and the insured told him that he believed he knew a woman who would have sex with him. The insured then called complainant.

The insured claims that he asked complainant if he could come over with friends. She claims that the insured stated, in response to her question, that he was alone. In any event, complainant agreed to have the insured come to her apartment. When the three men arrived, complainant allowed them in and offered them drinks. Complainant claims the insured then began to take off her prosthetic arm and her clothing. Because this made her uncomfortable, complainant went into the bedroom to put on more clothes and the insured followed her in. The insured claims that complainant went into the bedroom to "slip into something more comfortable."

Complainant claims that, once in the bedroom, the insured called in the other men

and told them to remove their clothes. She claims all three men sexually assaulted her. Complainant also claims one of the men bit her on her breasts and vulva, causing bruising. She claims that she told the men to "stop this" several times. The insured claims, however, that complainant consented to sex with all three men in her bedroom. It is undisputed that, at some point after the sexual encounter between all four parties, the insured left the apartment to walk his dog, but the other two men stayed. After the insured left the apartment, complainant claims the other two men sexually assaulted her by forcing her to engage in vaginal and oral intercourse.

Complainant first contacted the police on November 27, 1989. She was examined and found to have "abrasions in [her] pubic area and scratches." Though the police investigated the report and assisted complainant in taping two conversations with the insured, the record in this case does not show that charges were brought against any of the three men.

Complainant served her second amended complaint against the three men on April 24, 1992. This complaint alleges six counts against all three men: assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation and sexual battery. The insured tendered the defense of these claims to Allstate, with whom he had a homeowner's insurance policy. Allstate denied it had a duty to defend or indemnify the insured with respect to any of the claims. Allstate then commenced this declaratory judgment action.

Allstate filed a motion for summary judgment on October 7, 1992. On November 10, 1992, the insured and complainant entered into a *Miller–Shugart* agreement.[1]

On February 12, 1993, the trial court entered judgment for Allstate on all counts. In its memorandum accompanying the judgment, the trial court made two holdings. First, the trial court dismissed complainant's negligence claim because the record did not present a genuine issue of material fact regarding whether the insured's alleged negligence was the proximate cause of complainant's injuries. Second, the trial court held that, as a matter of law, complainant's injuries resulted from the insured's intentional acts, stating:

Ms. C.B. has consistently stated on several occasions, and under oath on one occasion, that she was a victim of a sexual assault in which S.F. played an integral part. Ms. C.B. has not provided the court with information in the format contemplated by Rule 56.03—that is, pleadings, depositions, answers to interrogatories, admissions or affidavits—tending to show that S.F.'s involvement in the incident was anything other than what she has contended: a forced sexual assault.

Even assuming that S.F. did not intend to injure Ms. C.B., the intentional act exclusion of the policy would still apply in this case. The Minnesota Supreme Court has held in several cases that claims of nonconsensual sexual assault and battery invoke the intentional injury exclusion as a matter of law. * * * *

There is no question but that neither Allstate nor S.F. believe that S.F. would be entitled to coverage against claims arising out of nonconsensual sexual assaults. If the sexual activity in this case were consensual, as S.F. has stated on various occasions, there would be no assault and no claim for recovery.

The court of appeals affirmed the trial court's dismissal of the five intentional claims, but reversed with regard to complainant's negligence claim; it held that Allstate had a duty to defend the insured against that claim.[2] The court of appeals found that the

---

1. The insured agreed to pay $10,000 to complainant, which would come out of the insured's personal assets. The insured also stipulated to judgment against him in the amount of $280,000, which was to be collected from Allstate pursuant to the insured's homeowner's insurance policy.

2. The only possible negligence claim was in Count IV of plaintiff's Second Amended Complaint for "Negligent Infliction of Emotional Distress." This count reads as follows:

*COUNT IV.*
(Negligent Infliction of Emotional Distress)
Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 15 set forth above.

record presented a genuine issue of material fact regarding complainant's negligence claim and stated that the trial court had improperly examined only the complaint to determine whether the record presented an issue of fact regarding the foreseeability of risk to complainant. The court of appeals noted that the insured's intentional act of having sex with complainant and his allegedly negligent act of "abandonment" were distinct acts creating different potentials for liability. Finally, the court of appeals remanded the case to determine whether Allstate had a duty to indemnify the insured with regard to complainant's negligence claim. We accepted review.

The insured's homeowner's insurance policy with Allstate includes the following provisions:

SECTION II—FAMILY LIABILITY AND GUEST MEDICAL PROTECTION

Coverage X

Family Liability Protection

Losses We Cover:

Subject to the terms, limitations and conditions of this policy, Allstate will pay damages which an insured person becomes legally obligated to· pay because of bodily injury or property damage arising from an accident and covered by this part of the policy.

We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent.

Losses We Do Not Cover:

1. We do not cover bodily injury or property damage resulting from:

   a) An act or omission intended or expected to cause bodily injury or property damage. This exclusion applies

even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property, than that intended or expected * * *.

■ Both the trial court and the court of appeals correctly ruled that there is no coverage for the five intentional torts alleged in plaintiff's complaint. Complainant does not disagree. The sexual assaults alleged in the complaint surely cannot be characterized as "accidents" and they clearly come within the intentional act exclusion of the policy. *State Farm Fire & Cas. Co. v. Williams,* 355 N.W.2d 421 (Minn.1984). The fact that the insured and his companions deny any assaultive behavior is of no help to complainant's case, because if the sexual conduct was consensual, as the insured claims, there is no tort cause of action.

■ The issue before us, then, is whether plaintiff's complaint alleges a claim of negligence for which there would be coverage under Allstate's policy. We think not.

The complainant alleges that S.F., R.K. and Doe, by entering complainant's home, placed her in a "zone of danger of physical impact," *see Stadler v. Cross,* 295 N.W.2d 552 (Minn.1980), and, as a result, plaintiff suffered the negligent infliction of emotional distress. *See supra* note 1. This allegation, however, amounts to nothing more than a claim that the three men entered plaintiff's home to assault her sexually; in other words, this allegation is just a variation of the intentional assault claims, which are barred by the intentional act exclusion.

Taking a cue from the court of appeals' opinion, complainant also argues that the insured negligently abandoned her; that after the insured had consensual sex with her in the apartment, he left the apartment, notwithstanding her request that he stay, when he knew or should have known that the other

16. S.F., R.K. and Doe had a duty to Plaintiff to allow her to live in a place which does not include a zone of danger.

17. S.F., R.K. and Doe knew that they had the propensity to sexually assault the Plaintiff.

18. By allowing themselves to enter the Plaintiff's home, S.F., R.K. and Doe placed the Plaintiff in a zone of physical impact.

19. As a result of being placed in a zone of danger of physical impact by the Defendants named herein, Plaintiff has suffered and continues to suffer damages including, but not limited to, emotional distress, mental anguish and lost wages.

two men would sexually assault her. The difficulty with this theory, aside from the fact it has never been pleaded, is that it attempts to isolate one aspect of the insured's conduct from his whole conduct that evening and then label it negligence. In fact, however, if complainant's version of events is true, the sexual assaults that evening were part of an overall intentional plan on the part of the three men to use plaintiff for their sexual pleasure. This is reprehensible conduct, but it is intentional reprehensible conduct for which all three defendants are liable to plaintiff for intentional assault and battery.

Even if the "abandonment" might be isolated, a negligence claim would only arise if defendant owed a duty to complainant to use reasonable care to protect her from harm others might inflict. For such a duty to arise there must be a "special relationship" between complainant and the insured. *See Restatement (Second) of Torts* § 315 (1965). Here there was no such "special relationship" and, therefore, no duty to use reasonable care to protect complainant. Under the circumstances of this case, the alleged failure of the three men to protect the plaintiff from each other was simply part of an alleged deliberate and intentional conspiracy to take advantage of plaintiff sexually. Again, reprehensible as this may be, it is not convertible into negligence.

Allstate does not have a duty to indemnify the insured for "act[s] or omission[s] intended or expected to cause bodily injury." Complainant's "negligence" allegation is essentially that the insured, as well as his co-defendants, intended or expected to sexually assault her when they allowed themselves to enter her home, thereby placing her within a zone of danger. We do not believe an insurer has a duty to defend or indemnify an insured for such a claim.

Reversed.