864 So.2d 31 (2003)
STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, authorized to do business in Florida, Appellant,
v.
Gregg A. TIPPETT, Michael J. Hummel, and Agata Januszczak, Appellees.
No. 4D02-3783.
District Court of Appeal of Florida, Fourth District.
November 19, 2003.
Rehearing Denied February 9, 2004.
*32 Kara Berard Rockenbach of Gaunt, Pratt, Radford & Methe, P.A., West Palm Beach, and Sachs, Sax & Klein, P.A., Boca Raton, for appellant.
Peter G. Herman of Tripp, Scott, Fort Lauderdale, for appellee Agata Januszczak.
Gordon R. Leech and Farrah C. Fugett-Mullen, John P. Wiederhold of Wiederhold & Moses, P.A., and L. Donnie Murrell of L.D. Murrell, P.A., West Palm Beach, for appellees.
ARAMONY, SUSAN J., Associate Judge.
State Farm Fire and Casualty Company (State Farm) appeals the final judgment entered in favor of Defendants/Appellees, Gregg Tippett (Tippett) and Michael Hummel (Hummel), the insureds in a declaratory relief action. The trial court found that State Farm had a duty to defend and indemnify the insureds in a civil suit brought against them by Defendant/Appellee Agata Januszczak (A.J.) for negligence and sexual assault and battery. State Farm contends that no insurance coverage existed for the willful acts of Tippett and Hummel under the exclusionary language in the insurance policy. Tippetts and Hummels position is that State Farm had a duty to defend them based upon allegations in the Sixth Amended Complaint, wherein A.J. alleges the insureds did not intend or expect, or act willfully and maliciously, to cause her injury. A.J. also maintains that the allegations in the underlying complaint fall within the scope of the policy's coverage and State Farm has a duty to defend. We find the trial court erred in denying State Farms motion for summary judgment, and reverse and remand for entry of summary judgment in favor of State Farm. We need not address the other issues.
We first note that the allegations in A.J.s Sixth Amended Complaint control the issue of whether State Farm has a duty to defend. It is well-established that an amended pleading supersedes an earlier pleading unless it expresses an intent to preserve portions of the earlier pleading. State Farm v. Higgins, 788 So.2d 992, 995 (Fla. 4th DCA 2001) (citing Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 815 (Fla. 1st DCA 1985)); Forum *33 v. Boca Burger, Inc., 788 So.2d 1055, 1059 (Fla. 4th DCA 2001), review granted, 817 So.2d 844 (Fla. Mar.22, 2002). A.J.'s Sixth Amended Complaint did not expressly state an intent to preserve portions of the previously filed Fifth Amended Complaint. Thus, the allegations in the Sixth Amended Complaint determine State Farms duty to defend.
In the underlying case A.J. brought a civil action for damages against Tippett and Hummel, alleging that she was a patron of a Boca Raton nightclub when she was drugged without her knowledge with GHB (Gamma Hydroxybutyric Acid), became incapacitated, and was caused to engage, without her consent, in sexual activities with Tippett and Hummel in the parking lot of the nightclub. A.J. incorporated these general allegations into subsequent negligence and sexual assault and battery counts against the insureds, Tippett and Hummel. In the negligence counts, A.J. alleged that Tippett touched her breasts, digitally penetrated her vagina, and/or engaged in vaginal sexual intercourse and/or oral sex. A.J. further alleged as follows:
A.J. was under the influence of GHB, that had been placed in her drink by Tippett or a third party. Tippett knew or should have known that A.J. was incapacitated.
A.J. was conscious but was unaware of what was occurring and, therefore, was unable to give her permission or consent to Tippett to engage in the aforesaid sexual activities.
Tippett, allegedly unaware of A.J.'s condition and being under the belief that his actions were with the permission and consent of A.J. may neither have expected nor intended from his standpoint, that his participation in the aforementioned activities would result in harm, bodily injury, or damage to A.J.
In the sexual assault and battery count against Tippett, A.J. alleged that he sexually assaulted and offensively touched her by spiking her drink with GHB, without her permission or consent, which put her into a drug induced stupor, rendering her incoherent and otherwise physically and mentally incapacitated. She further alleges that while she was incapacitated Tippett dragged her, without her permission or consent, to a vehicle in the parking lot of the club, where he intended to and did strike her and sexually assault her by touching her breasts, digitally penetrating her vagina, and/or engaging in vaginal sexual intercourse and/or oral sex, that he intended to cause actual apprehension of imminent physical harm to her and did cause actual physical harm to her.
A.J. alleges identical negligence and sexual assault and battery counts against Hummel.
In determining whether a duty to defend exists, the trial court is confined to the allegations in the complaint. Higgins, 788 So.2d at 995 (citing State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1077 n. 3 (Fla.1998) and Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla.1977)). The trial court is restricted to the allegations set forth in the complaint, regardless of what the insured or others say actually happened. Marr Invs., Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993). Moreover, the insurer has a duty to defend even if the facts alleged are false or the legal theories unsound. Higgins, 788 So.2d at 996.
In the case at bar, the State Farm Homeowners Insurance Policy provides personal liability coverage for bodily injury caused by an "occurrence." Occurrence is defined in the policy as an accident which results in bodily injury. However, the policy specifically excludes coverage for bodily *34 injury which is expected or intended, or willful and malicious.[1]
The term "accident" is not defined in the policy. However, the Florida Supreme Court has held that the term "accidental," as used in an insurance policy, means unexpected or unintended. Dimmitt Chevrolet, Inc. v. Southeastern Fid. Ins. Corp., 636 So.2d 700, 704 (Fla.1993) (citing Hartford Accident & Indem. Co. v. U.S. Fid. & Guar. Co., 962 F.2d 1484 (10th Cir.1992)). The court has further held that the term accident, when not defined in a liability policy, encompasses not only "accidental events" but also injuries or damages neither expected nor intended from the standpoint of the insured. State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072,1076 (Fla.1998).
Exclusionary clauses in liability insurance policies are always strictly construed. Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176, 179 (Fla. 4th DCA 1997) (citing Demshar v. AAACon Auto Transp., Inc., 337 So.2d 963, 965 (Fla.1976)). Whether injuries or damages were expected or intended by the insured is a question of fact in some cases, or a matter of law in other cases, where the insured's actions were so inherently dangerous or harmful that injury was sure to follow. CTC Dev. Corp., 720 So.2d at 1076 (citing Landis v. Allstate Ins. Co., 546 So.2d 1051 (Fla.1989)).
In Landis v. Allstate Insurance Co., 546 So.2d 1051 (Fla.1989), the parents of children who were sexually molested at a licensed childcare facility brought an action alleging gross negligence and intentional harm against the day-care owners, who were convicted of criminal sexual battery of the children left in their care. The owners operated the childcare facility in their home, which was covered by a homeowners policy that excluded coverage for bodily injury intentionally caused by the insured. The Florida Supreme Court found that no coverage existed under the intentional acts exclusion in the policy. Landis, 546 So.2d at 1052 (approving the Third District's opinion in Landis v. Allstate Ins. Co., 516 So.2d 305 (Fla. 3d DCA 1987), which affirmed the trial court's entry of summary judgment in favor of the insurance company). The court rejected the argument that the intentional acts exclusion did not apply if the insureds did not have the specific intent to cause the harm. It reasoned that, "To state a child molester intends anything but harm and long-term emotional anguish to the child defies logic." Id. at 1053.
Indeed Florida courts have consistently denied insurance coverage for intentional *35 sexual acts on children. See Consol. Am. Ins. Co., Inc. v. Henderson, 590 So.2d 1050 (Fla. 3d DCA 1991) (reversing trial court's finding of coverage under homeowner's insurance policy for sexual abuse committed by his son upon plaintiff when she was a child, finding the sexual conduct an "intentional act" under the intentional act exclusion in the policy); Insurance Co. of N. Am. v. Querns, 562 So.2d 365 (Fla. 2d DCA 1990) (finding a teacher's molestation of a school girl an intentional act excluded from coverage); McCullough v. Cent. Fla. YMCA, 523 So.2d 1208 (Fla. 5th DCA 1988) (finding molestation of children by an employee of the YMCA an intentional act and excluded from coverage).
Similarly, in Lindheimer v. St. Paul Fire & Marine Insurance Co., 643 So.2d 636 (Fla. 3d DCA 1994), the Third District held that a dentist's sexual assault on a patient after administering valium for a periodontal treatment was not covered under the terms of his professional liability policy. The courts have also excluded coverage for sexual harassment; the intent to harm the victim is inferred, as in sexual abuse cases. State Farm Fire & Cas. Co. v. Compupay, Inc., 654 So.2d 944, 947 (Fla. 3d DCA 1995).
While the Florida courts have yet to address whether insurance coverage exists for the negligent rape or sexual assault of an adult, other jurisdictions have declined to allow such coverage. See Belsom v. Bravo, 658 So.2d 1304, 1306 (La.App. 5th Cir.1995) (extending principle of inferred intent to acts of sexual assault regardless of age); Commercial Union Ins. Co. v. Sky, Inc., 810 F.Supp. 249, 253 (W.D.Ark. 1992) (granting insurer's motion for summary judgment finding no duty to defend insured in sexual harassment case; "it strains the imagination to speculate how a pattern of sexual overtures and touching can be `accidental'"); Alber v. Farm Bureau Mut. Ins. Co. of Mich., 441 Mich. 886, 492 N.W.2d 246 (1992) (finding sexual intercourse between insured and mildly retarded plaintiff not an "occurrence" within coverage of insured's homeowners policy); Merced Mut. Ins. Co. v. Mendez, 213 Cal. App.3d 41, 261 Cal.Rptr. 273 (1989) (holding that acceptance of construction of the term "accident" under a homeowner's insurance policy to include forced oral copulation or assault with intent to commit forcible oral copulation would "strain credulity"); Altena v. United Fire & Cas. Co., 422 N.W.2d 485 (Iowa 1988) (holding that homeowner insurance coverage is precluded by nonconsensual sexual acts); Allstate Ins. Co. v. S.F., 518 N.W.2d 37 (Minn.1994) (holding that as a matter of law claims of nonconsensual sexual assault and battery invoke the intentional injury exclusion); New York Underwriters Ins. Co. v. Doty, 58 Wash.App. 546, 794 P.2d 521 (1990) (precluding coverage for sexual assault and rape under intentional exclusion portion of homeowner's insurance policies).
A liability insurance carrier must defend the insured only when the initial pleadings fairly bring the case within the scope of coverage. Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Props. Corp., 487 So.2d 1051, 1054 (Fla.1986). However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend. Reliance Ins. Co. v. Royal Motorcar Corp., 534 So.2d 922, 923 (Fla. 4th DCA 1988). Thus, wording alone in a pleading does not create a duty to defend, regardless of its artfulness. See Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc., 771 So.2d 579, 582 (Fla. 4th DCA 2000) (holding that use of "buzz words" in a complaint will not trigger coverage when cause of action is for a noncovered act). The allegations within the complaint must state a cause of action that seeks recovery for the type of damages *36 covered by the insurance policy in question. Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1306-07 (Fla. 1st DCA 1992); accord Hunzinger Constr. Corp. v. Quarles & Brady Gen. P'ship, 735 So.2d 589 (Fla. 4th DCA 1999). The right to an early resolution of a coverage issue should turn on the meritson whether a policy exclusion applies and not on creative pleading. Higgins, 788 So.2d at 1005.
A.J.'s novel pleading in her Sixth Amended Complaint will not be permitted to circumvent an insurance policy exclusion. A.J. alleges she was drugged without her knowledge with GHB, a drug with known dangerous side effects including extreme lethargy, memory loss, and, in some cases, loss of consciousness and respiratory distress. She further alleges she became incapacitated and was caused to engage without her consent in sexual acts in the parking lot of a nightclub in the early morning hours. A.J.'s allegation that Tippett and Hummel knew or should have known she was incapacitated by a drug placed in her drink by Tippet, Hummel, or a third party, but may neither have expected nor intended the resultant harm, bodily injury, or damage, is unreasonable and illogical.
As the Supreme Court of Florida held in Landis, the specific intent to commit harm is not required by the intentional acts exclusion in a homeowners policy, as "some form of harm inheres in and inevitably flows from the proscribed behavior." 546 So.2d at 1053 (quoting Zordan ex rel. Zordan v. Page, 500 So.2d 608, 614 (Fla. 2d DCA 1986) (Frank, J., dissenting)).
Florida courts have unequivocally held that no insurance coverage exists for child molestation. The policy in this case does not provide insurance coverage for "negligent rape" or sexual assault of an incapacitated adult. Furthermore, public policy dictates against insuring for losses from intentional or criminal acts. If such insurance were available, the financial burden of the loss would shift from the wrongdoer to the insurer. Hrynkiw v. Allstate Floridian Ins. Co., 844 So.2d 739, 742 (Fla. 5th DCA 2003). We now hold that no coverage exists for the allegations in this case based upon the language found in the policy's exclusion.
Accordingly, this court reverses the trial court's entry of final judgment for the insureds, and remands for entry of summary final judgment in favor of State Farm.
WARNER and MAY, JJ., concur.
NOTES
[1] Pursuant to the "Personal Liability" section of the State Farm Homeowners Insurance Policy:

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
1. Pay up to our limit of liability for the damages for which the insured is legally liable; and
2. Provide a defense at our expense by counsel of our choice ...
Pursuant to the "Exclusions" section of the policy, coverage does not apply to the following:
a. bodily injury or property damage:
(1) which is either expected or intended by an insured; or
(2) to any person or property which is the result of willful and malicious acts of the insured.
The policy's definitions of bodily injury and occurrence are as follows:
"Bodily injury" means physical injury, sickness, or disease to a person....
"Occurrence"... means an accident, including exposure to conditions, which results in bodily injury or property damage.