[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14193
Non-Argument Calendar
_____

D.C. Docket No. 6:18-cv-01608-CEM-GJK

PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY,

Plaintiff - Appellee,

versus

HUB CITY ENTERPRISES, INC.,
WALL ST. ENTERPRISES OF ORLANDO, INC.,

Defendants - Appellants,

ROBERT HUNT,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 30, 2020)

Before WILSON, ANDERSON and DUBINA, Circuit Judges.

PER CURIAM:

This is an action by an insurer, the Princeton Excess and Surplus Lines Insurance Company ("PESLIC"), seeking a declaration that it owes no duty to defend its insureds, Hub City Enterprises, Inc. and Wall Street Enterprises of Orlando, Inc. (collectively "the insureds"), against a lawsuit filed by Robert Hunt ("Hunt"). In the underlying negligence suit, Hunt seeks recovery for personal injuries he sustained while attending the insureds' festival, "Rum Fest 2017." The district court granted PESLIC's motion for judgment on the pleadings, finding that PESLIC did not owe a duty to defend and did not have an obligation to indemnify the insureds in the underlying state court negligence action filed by Hunt. After a careful review, we affirm the district court's order granting judgment to PESLIC.

## I. BACKGROUND

On May 21, 2018, Hunt filed in state court the underlying negligence suit against the insureds seeking to recover for personal injuries he sustained while attending the Rum Fest 2017. The insureds are the owners/operators of a complex of bars, restaurants and night clubs located within one city block of each other in downtown Orlando, commonly known as the Wall Street Plaza. Rum Fest is an annual event that takes place in and around the Wall Street Plaza and an adjacent

2

area, and it is promoted as an outdoor celebration of rum and reggae, featuring live reggae music and performances on an outdoor stage.

Hunt alleges in his complaint that during the event, the insureds either provided or allowed an extra-large, heavy, inflatable beach ball to be thrown into the air and pushed around by attendees.  Hunt asserts that he sustained severe ligament and tendon injuries when he "used his outstretched arms and hands to push the extra-large beach ball away from him to prevent it from hitting him in the head."  (Underlying complaint ¶ 8.)  Hunt set forth identical negligence claims against the insureds, asserting that they owed a duty to guests at Rum Fest to correct or warn of known dangerous conditions and to maintain the premises in a reasonably safe condition.  (*Id.* ¶ 13.)  Hunt enumerated five specific instances of negligence in the complaint.  (*Id.* ¶ 14.)

PESLIC issued a commercial general liability policy to the insureds that was in effect at the time Hunt alleges he sustained injuries at the Rum Fest.  The policy requires PESLIC to defend and indemnify the insureds against claims of bodily injury or property damage to which insurance applies.  (Policy, Doc. 1-2 at 41.)  PESLIC received notice of the underlying lawsuit in July 2018 and agreed to provide a defense subject to a reservation of rights to deny coverage.  The specific provision at issue in the policy concerns the "Amusement Devices" exclusion.  (*Id.*

3

at Doc. 1-2 at 19.)  The exclusion bars coverage for any loss allegedly arising out

of the use of an "amusement device," which is defined non-exhaustively to

include, among other things

1. Any mechanical or non-mechanical ride;
2. Any device that requires the user to strike, punch, or kick;
3. Rock climbing walls, Velcro walls and similar scaling devices;
4. "Moon Bounces," "Moon Walks," "Space Walks," and similar inflatable games and devices;
5. Laser tag, bungee jumping, Sumo wrestling, human spheres, slides, water slides and similar games and devices;
6. Gymnastic equipment;
7. Mechanical bull, horse, surfboard, skateboard and similar devices;
8. Dunking booth or tank; and
9. Trampoline.

(*Id.*)

PESLIC sought a declaratory judgment that it owes no defense or indemnity

obligation in the underlying tort suit because the "Amusement Device" exclusion

applies.  The district court found that the policy exclusion was not ambiguous,

although it suffered from a deplorable lack of a serial comma, and it exempted

PESLIC from providing a defense and an obligation of indemnity to the insureds.

## II. STANDARD OF REVIEW

This court reviews *de novo* the district court's order granting a Federal Rule

of Civil Procedure 12(c) motion for judgment on the pleadings.  *See Perez v. Wells*

*Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).  "Judgment on the pleadings is

appropriate when there are no material facts in dispute and the moving party is

4

entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005).  The interpretation of an insurance contract is also a matter of law subject to *de novo* review.  *Chalfonte Condo. Apartment Ass'n Inc. v. QBE Ins. Corp.*, 561 F.3d 1267, 1274 (11th Cir. 2009) (quotation omitted).

## III. DISCUSSION

In this diversity action, we must apply the substantive law of the forum state, Florida, in determining the applicability of the policy exclusion.  *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011).  "In interpreting insurance contracts, the Florida Supreme Court has made clear that the language of the policy is the most important factor."  *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (quotation omitted).  Additionally, "insurance contracts are construed according to their plain meaning."  *Id.* at 1274 (quoting *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005)). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision."  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005) (quotation omitted).  Where the "relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is

considered ambiguous." *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). Additionally, the mere fact that the policy language requires interpretation does not render the language ambiguous. *See Valiant Ins. Co. v. Evonosky*, 864 F. Supp. 1189, 1191 (M.D. Fla. 1990).

Under Florida law, "[a]n insurer's duty to defend is distinct from and broader than the duty to indemnify." *Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (quotation omitted). Whether an insurer has a duty to defend "is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580 (Fla. Dist. Ct. App. 2000). For the duty to defend to arise, the initial pleadings must "fairly bring the case within the scope of coverage." *State Farm Fire & Cas. Co. v. Tippett*, 864 So.2d 31, 35 (Fla. Dist. Ct. App. 2003). In other words, the complaint must contain allegations that "state a cause of action that seeks recovery for the type of damages covered by the insurance policy in question." *Id.* at 35–36. "If the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merit of the lawsuit." *Amerisure Ins. Co.*, 771 So.2d at 580. *See also Lawyers Title Ins. Corp. v. JDC*

6

*(America) Corp.*, 52 F.3d 1575, 1580–81 (11th Cir. 1995) (stated another way, "the 'actual facts' of the situation are not pertinent" (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. Dist. Ct. App. 1985)).  If there is any doubt about the insurer's duty to defend, then the ambiguity must be resolved in favor of the insured.  *Trizec Props., Inc. v. Biltmore Constr. Co., Inc.*, 767 F.2d 810, 811–12 (11th Cir. 1985).

The district court correctly granted judgment to PESLIC on its declaratory action.  Under Florida law, the court looks to the allegations of the underlying complaint against the insured and generally does not consider facts outside the underlying complaint.  *See Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5, 10 n.2 (Fla. 2004) (noting that "there are some natural exceptions to this [standard] where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint").  The district court properly rejected the insureds' attempt to present extrinsic evidence, that the inflatable beach ball was intended as a decoration only, to bring the underlying complaint within the policy provisions.  This evidence is irrelevant because at the time of Hunt's alleged injury, the inflatable beach ball was not an immobile decoration, but rather, a moving object.  The original intended purpose of the inflatable beach ball is not relevant in determining PESLIC's duty to defend the

7

insureds in the underlying tort action; thus, the district court properly rejected the insureds' attempt to proffer extrinsic evidence.

Furthermore, as the district court correctly determined, the policy exclusion is not ambiguous. The "Amusement Devices" exclusion provides a non-exhaustive list of devices that require a user to strike, punch, or kick. Contrary to the insureds' assertion, the fact that an extra-large inflatable beach ball was not listed in the exclusion, does not exempt it from qualification. *See e.g. Travelers Indem. Co. v. Figg Bridge Eng'rs, Inc.*, 389 F. Supp. 3d 1060, 1072–73, 1076–77 (S.D. Fla. 2019) (holding that a professional services exclusion applied, even though the service at issue was not among the non-exhaustive list of activities that constituted professional services), *appeal docketed*, No. 19-12854 (11th Cir. July 24, 2019). The underlying complaint alleges that the insureds "provided an extra-large, heavy inflatable beach ball for, or allowed the extra-large beach ball to be thrown into the crowd for people to push it around in the air." (Underlying complaint ¶ 8.) The complaint also asserts that people attending the Rum Fest knocked the beach ball in the air toward Hunt, who used his outstretched arms and hands to push it away. (*Id.* ¶ 9.) These allegations are sufficient to determine that the inflatable beach ball, at the time of Hunt's alleged injuries, was being used as an amusement device because it was being "struck," or "pushed" by the Rum Fest attendees. Although

8

Hunt utilized a different verb in his complaint, the common usage of the verb "push" is to show forcible contact. The ordinary and common understanding of "push" demonstrates that at the time of the incident the beach ball was a "device that require[d] the user to strike, punch, or kick" it.

We conclude that Hunt's claims in the underlying state court negligence action are not covered by the insurance policy, and PESLIC has no duty to defend the insureds in connection with Hunt's lawsuit. Because we conclude from the record that PESLIC has no duty to defend, it owes no duty to indemnify. *See Trailer Bridge, Inc. v. Ill. Nat. Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) ("A court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.") (quotation omitted). Accordingly, for the above-stated reasons, we affirm the district court's order granting judgment to PESLIC on its declaratory judgment action.

**AFFIRMED**.